## IN THE UNITED STATES DISTRICT COURT FOR THE
## EASTERN DISTRICT OF PENNSYLVANIA

|                          |     |              |
|--------------------------|-----|--------------|
| ALVIN SWIGGETT,          | :   |              |
|     Plaintiff, | : | CIVIL ACTION |
|                          | :   |              |
|                v. | : |              |
|                          | :   | NO. 10-1602  |
| STEPHEN BATCHO,          | :   |              |
|     Defendant. | : |              |
|                          | :   |              |

October ___ , 2011                                                    Anita B. Brody, J.


### MEMORANDUM

Plaintiff Alvin Swiggett brings suit against Defendant Stephen Batcho,[1] a parole officer

for the Pennsylvania Board of Probation and Parole ("BPP"), under 42 U.S.C. § 1983.[2]  Swiggett

alleges that he was held in prison beyond his maximum date for release, in violation of his

Eighth Amendment right to be free from cruel and unusual punishment, and that Batcho, in his

individual capacity, is liable for this constitutional violation.[3]  I exercise jurisdiction over this

---

[1] On July 6, 2006, Batcho was assigned to handle Swiggett's revocation hearing process.  Batcho Dep. 23:21-24:4. 25:13-14.  Swiggett alleges that Batcho should be held liable for his imprisonment beyond his maximum date for release because Batcho delayed his revocation hearing, which Swiggett believes resulted in his prolonged imprisonment.

[2] Originally, this action was brought against Defendants Catherine C. McVey and Stephen Batcho, and included a false imprisonment claim.  However, as a result of my partial grant of Defendants' motion to dismiss, Catherine McVey is no longer a party to the suit and the false imprisonment claim has been dismissed.  *See* ECF Nos. 15, 24.

[3] In his complaint, Swiggett alleged that he was entitled to relief under § 1983 because his detention beyond his maximum date for release resulted in violations of his rights under the Fourth, Fifth, Eighth, and Fourteenth Amendments.  However, Swiggett defended his right to pursue this § 1983 action in both his response to Defendants' motion to dismiss and his response to Batcho's motion for summary judgment solely on the basis that an Eighth Amendment violation occurred.  *See* ECF Nos. 10, 31, 34. Thus Swiggett has made clear, since the motion to dismiss stage, that his § 1983 claim is based solely on his allegation that this detention violated his Eighth Amendment right to be free from cruel and unusual punishment.

dispute pursuant to 28 U.S.C. § 1331.  Batcho has moved for summary judgment.  For the

reasons set forth below, I will grant Batcho's motion for summary judgment.

## I.  BACKGROUND[4]

Whether Swiggett was imprisoned beyond his maximum date for release depends entirely

on whether Swiggett served a sentence beyond the maximum term of imprisonment on his access

device fraud conviction or his contraband conviction. The following timeline shall explain

Swiggett's relevant incarceration history:

- **On January 24, 2002**     Swiggett was convicted of access device fraud[5] and as a result, he
  was sentenced to one to three years imprisonment with a minimum
  date for release of May 23, 2003 and a maximum date of May 25,
  2005.  Swiggett Dep 39:2-19; Swiggett Exs. 1, 2.

- **On March 24, 2004**     Swiggett was paroled on his access device fraud conviction.
  Swiggett Dep. 54:19-21.

- **On March 17, 2005**     Swiggett was arrested and incarcerated at Montgomery County
  Correctional Facility ("MCCF") for receiving stolen property.[6]
  Swiggett Dep. 44:6-16.

- **On April 1, 2005**     Prison officials at MCCF discovered that Swiggett possessed
  contraband.  At the time of this incident, Swiggett was still on
  parole for his access device fraud conviction.  Swiggett Ex. 2.

---

[4] On a motion for summary judgment, the facts are interpreted in the light most favorable to the nonmoving party. *Hunt v. Cromartie*, 526 U.S. 541, 552 (1999).
[5] Swiggett was also convicted of other offenses.  However, for ease of reference, these charges will collectively be referred to as the access device fraud conviction.
[6] These charges were nol prossed on May 17, 2007 and are only included to explain why Swiggett was in prison on April 1, 2005, when he was discovered possessing contraband.  *See* Swiggett Dep. 44:6-9.

- **On May 25, 2005**    Swiggett was arrested for the contraband that prison officials had found in his possession on April 1, 2005. Swiggett Dep. 44:17-45:19; Swiggett Exs. 1, 2.

- **On January 10, 2006**    Swiggett pled guilty to the contraband charge, received unsecured bail, and was released from MCCF where he had been imprisoned since his arrest on March 17, 2005. Swiggett Dep. 45:20-22, 53:8-16; Swiggett Ex. 2.

- **On July 6, 2006**    Swiggett, who was out on bail for the contraband offense, was arrested for possession of stolen property, unauthorized use of a vehicle, and obstructing justice.[7] Swiggett Dep. 56:9-16, 24, 57:1.

- **On July 12, 2006**    The BPP lodged a detainer against Swiggett on his access device fraud conviction. This detainer was placed on Swiggett because he had pled guilty to possessing contraband while still on parole for his access device fraud conviction. The purpose of the detainer was to keep Swiggett in prison until he received a parole revocation hearing on his access device fraud conviction. Batcho Dep. 30:3-7; Batcho Ex. 2.

- **On May 17, 2007**    Swiggett was sentenced on the contraband offense to time served to 24 months imprisonment by the Montgomery County Court of Common Pleas.[8] Swiggett Ex. 7.

---

[7] These charges do not impact Swiggett's sentencing calculation.
[8] On May 17, 2007, Swiggett was also sentenced for several other offenses. It is unnecessary to discuss the sentences that Swiggett received for these other offenses because the contraband sentence alone is sufficient to

3

- **In June of 2007**            Swiggett received an Initial Sentence Status Sheet informing him that his maximum date for release was September 16, 2007. Swiggett Dep. 108:4 – 109:8; Francavilla Ex. 5.  However, this maximum date for release did not take into consideration that Swiggett's parole was going to be revoked on his access device fraud conviction and he would legally be required to serve the backtime for this violation before he could begin to serve his sentence on the contraband conviction.  Francavilla Dep. 59:20-24, 60:1-19.

- **On September 16, 2007**  Swiggett was not released from prison.

- **On October 9, 2007**       Swiggett received a revocation hearing for violating his parole on the access device fraud conviction.  Swiggett Dep 101:12-18.

- **On November 26, 2007**  The BPP ordered Swiggett recommitted on his access device fraud conviction to serve six months backtime, and calculated Swiggett's parole violation maximum date for release as July 15, 2008. Francavilla Ex. 4.

establish that Swiggett was released before his maximum date for release.  Although both parties assert that, on May 17, 2007, Swiggett also received a time served to 24 month sentence on his parole violation on the access device fraud sentence he received from the Montgomery County Court of Common Pleas, it is important to note that this contention is legally incorrect and factually unsupported by the record.  For prisoners whose maximum sentence is two years or more, the BPP has exclusive power "[t]o parole and reparole, commit and recommit for violations of parole, and to discharge from parole . . . ."  61 Pa.C.S.A. § 6132.  Because Swiggett received a one to three year sentence on the access device fraud conviction, the BPP had the exclusive power to recommit him for violating his parole.  Moreover, even if this was not the case, revocation of parole cannot result in a new sentence (i.e. time served to 24 months) because the backtime a parole violator receives "is merely that part of an *existing* judicially-imposed sentence which the Board directs a parolee to complete following a finding . . . that the parolee violated the terms and conditions of parole . . . ."  *Krantz v. Com., Pa. Bd. of Probation & Parole*, 483 A.2d 1044, 1047 (Pa. Commw. Ct. 1984). Lastly, the record does not support the parties' contention that Swiggett received time served to 24 months on his parole violation.  Although the parties cite to Swiggett Exhibit 7 as proof that Swiggett was sentenced on his parole revocation, no such proof exists in this exhibit.

- **On December 22, 2007**   Swiggett appealed the BPP's decision of November 26, 2007. Swiggett Ex. 5.

- **On April 9, 2008**   The BPP modified its action of November 26, 2007 and changed Swiggett's parole violation maximum date for release to September 10, 2007.  Francavilla Ex. 4.  This maximum date for release only applied to Swiggett's parole violation and did not take into consideration any time Swiggett was required to serve for his contraband conviction.

- **On April 15, 2008**   Swiggett was released from MCCF.  Swiggett Dep. 121:6-15.

Sometime after his release, Swiggett brought this § 1983 action alleging that his maximum date for release from prison was September 16, 2007, and that he had been unconstitutionally detained after that date.  However, the record makes clear that Swiggett's maximum date for release on his contraband sentence was actually January 25, 2009, and that he was mistakenly released early on April 15, 2008.

Swiggett's imprisonment resulted from two separate convictions: his access device fraud conviction and his contraband conviction.  Under Pennsylvania law, because Swiggett's parole was revoked, he was required to serve the time he owed on his access device fraud conviction before he could begin serving his new sentence for the contraband conviction.[9]  Francavilla Dep.

---

[9] Specifically, Pennsylvania law provides: "If a new sentence is imposed on the parolee, the service of the balance of the term originally imposed by a Pennsylvania court shall precede the commencement of the new term imposed . . . [i]f a person is paroled from a county prison and the new sentence imposed upon him is to be served in the same county prison."  61 Pa.C.S.A. § 6138(a)(5).  This statute applies to Swiggett because he was originally paroled on his access device fraud conviction from MCCF and the sentence on his contraband conviction was to be served at MCCF.  Francavilla Dep. 55:12-15.

55:6-18. Accordingly, Swiggett began serving the backtime on his access device fraud conviction on May 17, 2007, the date he was convicted of the contraband offense. Francavilla Dep. 55:19-24. The following chart explains how the BPP determined that Swiggett had a maximum date for release of September 10, 2007 on his parole violation for his access device fraud conviction:

**Access Device Fraud Conviction:**

| | |
|---|---|
| **Sentence Beginning Date:** | **May 17, 2007.** Francavilla Dep. 55:19-24. |
| **Total Backtime Owed:** | **425 days.** Swiggett was released on parole for his access device fraud conviction on March 24, 2005, 425 days before his maximum date for release of May 25, 2005. Therefore, once Swiggett's parole was revoked on his access device fraud conviction, he owed the entire remaining 425 days of his unexpired maximum term.[10] Francavilla Dep. 42:1-24, 43:1-5. |
| **Backtime Credit:** | **309 days.** Swiggett received backtime credit for his imprisonment from July 12, |

---

[10] Pennsylvania law mandates that a convicted parole violator who is recommitted "shall be reentered to serve the remainder of the term which the parolee would have been compelled to serve had the parole not been granted . . . ." 61 Pa.C.S.A. § 6138(a)(2). Although the BPP ordered Swiggett to serve six months backtime on his access device fraud conviction, this order did not entitle Swiggett to be released after he served the six months. Rather, it meant only that after Swiggett completed the six months of backtime he became eligible for reparole on his access device fraud conviction. *See Riverbank v. Com., Pa. Bd. of Probation & Parole*, 501 A.2d 1110, 1113 n.4 (Pa. 1985) ("The period of recommitment set by the Board, which may be less than the unexpired term of the parolee's sentence, simply establishes a new parole eligibility date for the parolee – it does not entitle him to release after that period of time.")

|  | 2006 until May 17, 2007, the time period for which he was incarcerated solely because of the access device fraud detainer lodged against him.  Francavilla Dep. 45:15-24, 46:1-5. |
|---|---|
| **Backtime Still Owed:** | **116 days.**  Francavilla Dep. 57:1-19. |
| **Sentence Ending Date:** | **September 10, 2007.**  This end date accounts for the 116 days of backtime that Swiggett still had to serve.  Francavilla Dep. 57:18-22. |

Only after Swiggett finished serving the backtime for his access device fraud conviction on September 10, 2007, could he begin serving his sentence on the contraband conviction. Francavilla Dep. 57:23-24, 58:1-6.  Swiggett received a sentence of time served to 24 months on the contraband offense.[11]  The BPP had the authority to imprison Swiggett on his contraband offense until he served his maximum term.[12]  Francavilla Dep. 58:3-11.  The following chart explains why Swiggett's maximum date for release on his contraband conviction is January 25, 2009:

**Contraband Conviction:**

---

[11] Although Swiggett's sentence on his contraband conviction sounds like a county sentence and may have been intended that way, because the maximum term of imprisonment is 24 months, the sentence is a state sentence; thus the Board had exclusive power "[t]o parole and reparole [Swiggett], commit and recommit [him] for violations of parole, and to discharge [him] from parole . . . ." 61 Pa.C.S.A. § 6132.

[12] "[T]he sentence imposed for a criminal offense is the maximum term.  The minimum term merely sets the date prior to which a prisoner may not be paroled."  *Krantz*, 483 A.2d at 1047.

**Sentence Beginning Date:**                **September 10, 2007.**  Francavilla Dep. 57:23-24, 58:1-6.

**Maximum Sentence Owed:**                **24 months.**  Swiggett received a sentence of time served to 24 months.  The BPP had the authority to keep him in prison for the entire 24 months.  Francavilla Dep. 58:3-11.

**Time Served Credit:**                **7 months and 15 days.**  Swiggett received credit for the time he served on the contraband offense from May 25, 2005 until January 10, 2006 when he was released on bail for the contraband offense.  Francavilla Dep. 69:9-15.

**Effective Sentence Beginning Date:**                **January 25, 2007.**  If the 7 months and 15 days are subtracted from the September 10, 2007 sentence start date, then Swiggett's effective start

|                              | date is January 25, 2007.[13] |
|------------------------------|-------------------------------|
|                              | Francavilla Dep. 61:6-17. |
| **Sentence Ending Date:**    | **January 25, 2009.**  This date is exactly 24 months after Swiggett's effective start date of January 25, 2007 for his sentence.  Francavilla Dep. 61:21-24, 62:1-2. |

The above sentencing calculations demonstrate that Swiggett's release from prison on April 15, 2008 occurred well before he reached his maximum date for release on his contraband conviction of January 25, 2009.

## II.  LEGAL STANDARD

Summary judgment will be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  There is a "genuine" issue of material fact if the evidence would permit a reasonable jury to find for the nonmoving party.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  The "mere existence of a scintilla of evidence" is insufficient.  *Id.* at 252.

The moving party must make an initial showing that there is no genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The nonmoving party must then "make a showing sufficient to establish the existence of [every] element essential to that party's

---

[13] To state it more simply, Swiggett started to serve his contraband sentence on September 10, 2007.  At the time he began to serve the sentence, he had 7 months and 15 days credit for time served.  Therefore, he had approximately 16 months and 15 days remaining on his sentence until he reached his maximum term of imprisonment of 24 months.  Swiggett began serving the remaining 16 months and 15 days on September 10, 2007, giving him a maximum date for release of January 25, 2009.

case, and on which that party will bear the burden of proof at trial." *Id.* at 322; *see also* Fed. R. Civ. P. 56(c)(1). The nonmoving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). In determining whether the nonmoving party has established each element of its case, the court must draw all reasonable inferences in the nonmoving party's favor. *Id.* at 587.

## III. DISCUSSION

Swiggett seeks recovery under § 1983 for the alleged deprivation of his Eighth Amendment right to be free from cruel and unusual punishment. "To establish a claim under 42 U.S.C. § 1983, [Swiggett] must demonstrate a violation of a right secured by the Constitution and the laws of the United States. In addition, he must show that the alleged deprivation was committed by a person acting under color of state law." *Moore v. Tartler*, 986 F.2d 682, 685 (3d Cir. 1993). It is undisputed that Batcho was acting under color of state law. The issue remains whether Swiggett suffered an Eighth Amendment violation.

The Court of Appeals for the Third Circuit has held that the detention of an inmate beyond his or her term of imprisonment can constitute cruel and unusual punishment in violation of the Eighth Amendment if the inmate's confinement is without penological justification. *Sample v. Diecks*, 885 F. 2d 1099, 1107-08 (3d Cir. 1989). Although Swiggett contends that he was imprisoned beyond his maximum date for release, he admits that under Pennsylvania law he was required to serve the remaining time on his access device fraud conviction consecutive to his contraband sentence. Pl.'s Resp. to Def.'s Statement of Undisputed Material Facts Nos. 88-90, 93. Thus there can be no genuine dispute of the fact that a proper calculation of Swiggett's

sentences results in a maximum date for release of January 25, 2009.  Swiggett claims that

Batcho cannot now "after the fact" argue that he did not serve beyond his maximum date for

release because, at the time Swiggett was imprisoned, he "was under the realistic belief that he

was going to be released in September, 2007."  Pl.'s Surreply 8.  Essentially, Swiggett contends

that an Eighth Amendment violation occurred because the prison misled him to believe that his

maximum date for release was September 16, 2007.  Here, Swiggett was not detained beyond his

maximum date for release; rather, the prison's miscalculation actually benefitted him by

resulting in his release on April 15, 2008, a date well before his actual maximum date for release

of January 25, 2009.  Swiggett's punishment was clearly penologically justified because the

sentence he served was within the term established by the state and was imposed by the state "to

fulfill the retributive or deterrent functions of punishment."  *Sample*, 885 F.2d at 1108.

Because Swiggett's detention was penologically justified and did not last beyond the

termination of his sentence, his Eighth Amendment right to be free from cruel and unusual

punishment was not violated.  Therefore, I will grant Batcho's motion for summary judgment

and dismiss Swiggett's § 1983 lawsuit because he has failed to establish the existence of a

constitutional violation.[14]

---

[14] Even if Swiggett had not abandoned his claim that his detention beyond September 16, 2007 also violated his
Fourth, Fifth, and Fourteenth Amendment rights, Swiggett's § 1983 action would still be dismissed.  Swiggett's
detention clearly did not violate the Fourth Amendment's prohibition on unreasonable searches and seizures.
Additionally, there was no federal government involvement in Swiggett's detention; thus Swiggett's Fifth
Amendment due process rights could not have been violated.  Lastly, Swiggett's claim that his Fourteenth
Amendment due process rights were violated cannot succeed because the Court of Appeals for the Third Circuit has
already held that an inmate's due process rights are not violated when he is given a miscalculated release date that is
later corrected, even when it results in several more years of confinement than anticipated by the inmate.  *Evans v.
Sec. Pa. Dep't of Corr.*, 645 F.3d 650, 652 (3d Cir. 2011).

s/ Anita B. Brody

_____

ANITA B. BRODY, J.

Copies **VIA ECF** on _____ to:      Copies **MAILED** on _____ to: